[No. 28460. *En Banc.* January 15, 1942.]

JACK GENGLER, *Respondent*, v. KING COUNTY, *Defendant*, THE CITY OF SEATTLE, *Appellant*.[1]

[1]Reported in 121 P. (2d) 346.

228

*A. C. Van Soelen* and *John A. Homer,* for appellant.

*Peter Balkema,* for respondent.

*Tanner, Garvin & Ashley, C. C. Quackenbush, Edward J. Lehan, Lloyd L. Wiehl, Thor C. Tollefson, Leslie R. Cooper, Edward E. Johnson, B. Gray Warner, William R. Bell, William Hickman Moore, G. M. Ferris, Howard Carothers, Jesse H. Davis, Tim Healy, Harry L. Olson,* and *Lester T. Parker, amici curiae.*

SIMPSON, J.—Plaintiff instituted this action to quiet title to real property acquired by the county at a tax foreclosure sale and resold to plaintiff. The case, tried to the court upon its merits, resulted in a judgment in favor of plaintiff. The city of Seattle has appealed. The assignments of error relate to holdings of the court that certain local improvement assessments made

against the property during the time the county owned it were extinguished by a resale to respondent.

The facts may be stated as follows: During the year 1929, King county conducted a general tax foreclosure sale which included the property in question. There being no bidders at the foreclosure sale, the property was sold to King county. Thereafter a deed was issued December 4, 1929, and filed for record December 9, 1929.

The city of Seattle levied local improvement assessments against the property as follows:

| District No. | Which became a lien on |
|---|---|
| 3274 | Sept. 15, 1920 |
| 4789 | May 15, 1928 |
| 5137 | Apr. 14, 1930 |
| 5163 | Dec. 5, 1930 |

King county gave legal notice that it would sell the property February 29, 1940. At that time respondent purchased the property for five hundred dollars and received a treasurer's deed therefor, dated March 4, 1940. The proceeds of the sale were applied to the payment of general taxes, and the balance was turned over to the city and by the city applied on the local improvement assessments. Neither the notice of sale nor the deed made to respondent made reference to local improvement assessments.

Appellant maintains that chapter 139, Laws of 1929, p. 358, Rem. Rev. Stat., § 9342 [P. C. § 1064], applies in this case and that it requires the purchaser of county-owned lands to pay assessments levied against the property while owned by the county, if the purchase price does not nullify the assessments.

Respondent, on the other hand, contends that, since we have interpreted Laws of 1911, chapter 98, p. 467, § 40, Rem. Rev. Stat., § 9393 [P. C. § 1028], to mean that local improvement assessment liens attaching to

property prior to county acquisition from a general tax foreclosure were extinguished by resale, and since the county pursuant to various tax property resale statutes was to receive full value for the property and convey it free from liens, therefore local improvement assessment liens attaching to property subsequent to county acquisition, and while so owned, should likewise be extinguished on resale.

Prior to 1929, this contention might have been tenable. By the Laws of 1905, chapter 29, county-owned lands were made subject to assessment for local improvements. A provision in § 4, however, specifically excluded county property obtained through general tax lien foreclosures. Furthermore, this court, in interpreting Rem. Rev. Stat., § 9393, held that local improvement liens on property, created prior to the county's acquisition, were extinguished on resale. *Moe v. Brumfield*, 182 Wash. 608, 47 P. (2d) 847.

In 1929, the legislature enacted Laws of 1929, chapter 139, p. 358, Rem. Rev. Stat., § 9342, which completely reversed its former policy. This statute deleted the proviso in § 4 of the 1905 act, and added another to § 3:

"  . . . Provided, however, That where title to any property has been acquired by any such county through foreclosure of a general tax lien or liens, the assessment shall either be paid by the county from the proceeds of the sale of such property, or such property shall be sold subject to the lien of such assessment."

Consequently, by this amendment county land acquired through foreclosure of general tax liens was made subject to local improvement assessments. In addition, it expressly and unequivocally provided that, upon resale of the property,

"  . . . the assessment shall either be paid by the county from the proceeds of the sale of such property, or such property shall be sold subject to the lien of such assessment."

This proviso, then, contains two parts: a statement of change of legislative policy from exemption to non-exemption of county lands within cities assessed for local improvements acquired through the foreclosure of general tax liens, and two specific ways to collect the assessment, by the county from the proceeds of the sale of such property, or by selling the property subject to the lien of the assessment.

We hold, therefore, that, since the proceeds from the resale were insufficient to cover appellant's assessments, respondent's property is subject to a lien for the remaining deficit.

This holding, then, means (1) that county land acquired through foreclosure of general tax liens is subject to local improvement assessment liens which attach during the time that the county has title; (2) that local improvement assessment liens attaching *subsequent* to county acquisition are not extinguished on resale, notwithstanding the fact that local improvement assessment liens attaching to property *prior* to county acquisition from a general tax foreclosure are extinguished by a resale; (3) that local improvement assessment liens on county land attaching subsequent to acquisition must be paid either (a) by the county from the proceeds of the sale of such property, or (b) by selling the property subject to the lien of such assessment; and (4) that this holding concerns only Rem. Rev. Stat., § 9342, and has no reference whatsoever to Rem. Rev. Stat., § 9393.

Respondent next argues, as we understand his contention, that the statute is unconstitutional in that it impairs the power to tax by surrendering that power

and by favoring one set of investors over another set of investors interested in the same kind of securities, all contrary to the provisions of Art. VII, § 1, of our state constitution, as amended by the fourteenth amendment.

The fourteenth amendment reads:

"Article VII is amended by striking out all of sections 1, 2, 3 and 4, and inserting in lieu thereof the following, to be known as section 1:

"Art. VII, § 1. The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: Provided, That the Legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the Legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The Legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three hundred ($300.00) dollars for each head of a family liable to assessment and taxation under the provisions of the laws of this state of which the individual is the actual bona fide owner."

Respondent's first contention relative to the constitutional question is answered by our decisions in *North Spokane Irrigation Dist. v. Spokane County,* 173 Wash. 281, 22 P. (2d) 990, and *Kennewick Irrigation Dist. v. Benton County,* 179 Wash. 1, 35 P. (2d) 1109.

In the first case it appeared that land upon which

there were delinquent water assessments was "struck off" to the irrigation district by the county treasurer under the provisions of Rem. Rev. Stat., § 7444 [P. C. § 3222]. There was no redemption of the property within the time allowed by Rem. Rev. Stat., § 7447 [P. C. § 3225], and the county treasurer executed a deed to the irrigation district. The district then demanded of the treasurer that certain unpaid general taxes be canceled. The treasurer refused the demand and action was commenced to compel the cancellation. In upholding the right of the district to have the taxes canceled, this court stated:

"It is undoubtedly the rule that the state, through its legislature, may abolish or legislate out of existence a tax lien of any kind. *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68. Not only did the legislature, by § 7448, specifically provide that the deed passed an absolute title, but with the resulting effect of that statute constantly before it from the time of its enactment in 1890, it passed the law of 1927 exempting lands owned by irrigation districts from general state and county taxes. The legislature did not see fit to provide that the title conveyed by the deed should be subject to general taxes and other liens, as it did in cases of sales for unpaid local improvement assessments, Rem. Rev. Stat., § 9386, but made it absolute."

In the last cited case, *Kennewick Irrigation Dist. v. Benton County, supra,* the question was presented of whether or not land sold to a stranger to the title for delinquent irrigation assessments was relieved of prior general tax liens. It was contended that Rem. Rev. Stat., § 7448 [P. C. § 3226], as interpreted in *North Spokane Irrigation Dist. v. Spokane County, supra,* was unconstitutional in that it contravened the provisions of Art. VII, § 1, as amended by the fourteenth amendment.

Rem. Rev. Stat., § 7448, contains a provision that a

deed (such as here from an irrigation district to a purchaser) "conveys to the grantee the absolute title to the lands described therein, free from all encumbrances."

Rem. Rev. Stat., § 7440 [P. C. § 3218], provides that all lands owned by the irrigation district

" . . . shall be exempt from general state and county taxes: Provided, however, That in the event any lands acquired by the district by reason of the foreclosure of irrigation district assessments, shall be by said district resold on contract, then and in that event, said property and contract shall be by the county assessor immediately placed upon the tax rolls for taxation for general state and county taxes as real property and shall become subject to general state and county taxes from and after the date of said contract, . . . "

In deciding that Rem. Rev. Stat., § 7448, as interpreted in *North Spokane Irrigation Dist. v. Spokane County, supra,* was not unconstitutional, we said in *Kennewick Irrigation Dist. v. Benton County, supra*:

"A complete answer to the argument is the exemption provision of our constitution reading as follows:

" 'Such property as the Legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation.' Art. VII, § 2, as amended by the 14th Amendment.

"The constitution expressly authorizes, in the same section (Art. VII, § 2, as amended by the 14th Amendment) invoked by appellants, exemption from taxation of 'such property as the legislature may by general laws provide.' *If the legislature* may, by general laws, exempt property, it may also, by general laws, relieve property from tax liens." (Italics ours.)

What was said of Rem. Rev. Stat., § 7448, in the above cases applies with equal force to the 1929 local

improvement assessment statute now under consideration.

In regard to the last part of respondent's unconstitutionality contention, that one set of local improvement bondholders is favored over another set, it is apparent that this cannot be urged, since he is not a bondholder of the disfavored class. That a person cannot invoke a constitutional objection against a statute not applicable to his own particular situation is a well-known rule in this state. *State v. Bowen & Co.,* 86 Wash. 23, 149 Pac. 330; *State v. Charrier,* 151 Wash. 654, 276 Pac. 878; *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560; *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016; *Vance Lumber Co. v. King County,* 184 Wash. 402, 51 P. (2d) 623; *State ex rel. Hansen v. Salter,* 190 Wash. 703, 70 P. (2d) 1056.

Finally, respondent argues that the provisions of Rem. Rev. Stat., §§ 9340 and 9341 [P. C. §§ 1062, 1063], which we quote below, are insufficient to create a lien upon the county-owned property.

§ 9340. "All lands held or owned by any county in the state of Washington, in fee simple, in trust or otherwise, within the limits of any incorporated city or town in such county, except as herein otherwise provided, may be assessed and charged for the cost of all local improvements especially benefiting such land and property, which may be ordered by the proper authorities of such city or town."

§ 9341. "In all local improvement assessment districts in an incorporated city or town in this state, property in such district held or owned by the county in which such city or town is situated *shall be assessed and charged for its proportion of the cost of such local improvement in the same manner as other property in such district,* and the county commissioners of any such county are authorized to cause such assessment to be paid at the times and in the manner provided by law and the ordinances of such city or town

creating such local improvement districts, and making such assessments, and to pay any and all such assessments in any local improvement district heretofore made and which became due and payable prior to the time this act shall take effect, together with interest on such past due assessments." (Italics ours.)

As indicated by italics, the statute does state that the property may be assessed as other property in the district. This and other provisions of the statute indicate and create a lien upon the property benefited by the assessment. But whether it does or does not create a lien is immaterial for the reason that the provisions of the 1929 act definitely state that the *assessment* must be paid either from the proceeds of the sale or by the purchaser. That language is sufficient to indicate the legislative command without designating the assessment a lien.

Because respondent's other contentions are without merit, and because the questioned statute is unambiguous and clear, meaning just what it says, we hold that respondent purchased the property from the county with the knowledge of the import of the statute and he must therefore abide by its provisions.

The judgment is reversed.

ALL CONCUR.