[No. 44523. En Banc. August 11, 1977.]

REEVES R. MORAN, *Appellant,* v. THE STATE OF
WASHINGTON, ET AL, *Respondents.*

*Kleist & Davis, J. Murray Kleist,* and *John J. Caldbick,* for appellant.

*Slade Gorton, Attorney General,* and *Kevin Ryan, Assistant,* for respondent State.

*Ogden, Ogden & Murphy, James A. Murphy,* and *Douglas E. Albright,* for respondent KVOS Television Corporation.

HOROWITZ, J.—This appeal involves the constitutionality of RCW 43.51.063, dealing with a lease of parklands for television stations.

KVOS Television Corporation (KVOS) executed a 20–year lease with the State of Washington acting through the Washington State Parks and Recreation Commission on August 11, 1954. The area of land leased is on top of Mt. Constitution within Moran State Park on Orcas Island in the San Juan Islands. That land was originally deeded to the state without restriction by A. A. Hilton in January of 1927. KVOS after leasing the land erected a television tower 141 feet in height. Over the years it has improved the tower and its reconstruction costs would be approximately $1,150,000. There are other towers atop the mountain.

Because the lease was due to expire in August 1974, KVOS applied for renewal of the lease at the August 21,

1972, Commission meeting. The Commission voted to approve the lease renewal, the terms of which were to be negotiated.

On October 17, 1973, plaintiff, Reeves R. Moran, filed a petition in superior court to enjoin the Commission from entering into or renewing any lease with KVOS or any other "private enterprise." The complaint alleged violation of the State Environmental Policy Act of 1971 (RCW 43.21C) and the administrative procedures act (RCW 34.04). It further alleged the Commission's action in permitting the defendant Orcas Power and Light Company to construct power lines over a portion of the park deeded to the state in 1927 by Robert and Millie Moran violated restrictions in that deed. Plaintiff alleged he was the holder of any reverter rights under those deeds as the grandson of Robert Moran. An environmental impact statement dated November 16, 1973, was prepared concerning renewal of the KVOS lease, and the Commission voted against renewal later that month.

The legislature then enacted RCW 43.51.063 over the Governor's veto on April 16, 1974, and April 19, 1974, the first date being the date of passage by the Senate and the second being the date of passage by the House. The statute directs the Commission to extend existing television station leases at "fair market rental for at least one period of not more than twenty years" and provides "[t]hat notwithstanding any other provision of law the director in his discretion may waive any requirement that any environmental impact statement or environmental assessment be submitted as to any lease negotiated and signed between January 1, 1974 and December 31, 1974."[1]

<hr>

[1]The full text of RCW 43.51.063 reads:

"The commission shall determine the fair market value for television station leases based upon independent appraisals and existing leases for television stations shall be extended at said fair market rental for at least one period of not more than twenty years: *Provided,* That the rates in said leases shall be renegotiated at five year intervals: *Provided further,* That said stations shall permit the attachment of antennae of publicly operated broadcast and microwave stations

Plaintiff then filed an amended petition on July 18, 1974, essentially realleging the allegations of the original complaint but adding a request for a declaratory judgment to "interpret and construe the validity and constitutionality" of RCW 43.51.063. He prayed for judgment declaring the statute unconstitutional and void.

Plaintiff obtained a temporary injunction on August 12, 1974, prohibiting renewal of the lease during the pendency of the action except on a month–to–month basis.

On November 13, 1975, KVOS and the other defendants filed a motion for summary judgment. The trial court granted the motion and dismissed the plaintiff's action with prejudice. Plaintiff appealed. No supersedeas bond having been filed, KVOS entered into a new lease with the State, acting through the Commission, on November 13, 1976. The lease is for 20 years ending June 30, 1996.

The sole issue raised by plaintiff's assignments of error is the claimed unconstitutionality of the statute on two grounds: (1) the separation of powers doctrine and (2) the equal protection clause of the United States Constitution (U.S. Const. amend. 14, § 1) and the State Constitution (Const. art. 1, § 12).

The parties' arguments have taken a range wider than that necessary to dispose of the assignments of error made. It is noted in this connection that on appeal there is no claim the renewed lease of KVOS is invalid as violative of the State Environmental Policy Act of 1971 or the administrative procedures act.

■ Preliminarily defendants contend plaintiff lacks standing to attack the constitutionality of RCW 43.51.063.

---

where electronically practical to combine the towers: *Provided further,* That notwithstanding any term to the contrary in any lease, this section shall not preclude the commission from prescribing new and reasonable lease terms relating to the modification, placement or design of facilities operated by or for a station, and any extension of a lease granted under this section shall be subject to this proviso: *Provided further,* That notwithstanding any other provision of law the director in his discretion may waive any requirement that any environmental impact statement or environmental assessment be submitted as to any lease negotiated and signed between January 1, 1974 and December 31, 1974."

Before one may attack the constitutionality of the statute he must have a sufficient direct interest in and be damaged by the statute sought to be attacked. *Flast v. Cohen,* 392 U.S. 83, 20 L. Ed. 2d 947, 88 S. Ct. 1942 (1968); *Baker v. Carr,* 369 U.S. 186, 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962); *Ex parte Levitt,* 302 U.S. 633, 82 L. Ed. 493, 58 S. Ct. 1 (1937); *First Nat'l Bank v. Louisiana Tax Comm'n,* 289 U.S. 60, 77 L. Ed. 1030, 53 S. Ct. 511 (1932); *Citizens Council Against Crime v. Bjork,* 84 Wn.2d 891, 529 P.2d 1072 (1975); *Ragan v. Seattle,* 58 Wn.2d 779, 364 P.2d 916 (1961), *appeal dismissed,* 371 U.S. 3, 9 L. Ed. 2d 47, 83 S. Ct. 22 (1962); *Port of Tacoma v. Taxpayers,* 53 Wn.2d 734, 336 P.2d 872 (1959); *State v. Canyon Lumber Corp.,* 46 Wn.2d 701, 284 P.2d 316 (1955); *Gengler v. King County,* 12 Wn.2d 227, 121 P.2d 346 (1942); *Ajax v. Gregory,* 177 Wash. 465, 32 P.2d 560 (1934).

The requirement of direct injury applies with equal force in environmental cases. As stated in *United States v. S.C.R.A.P.,* 412 U.S. 669, 688–89, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973), an environmental case:

> Of course, pleadings must be something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agencies' action.

In *O'Shea v. Littleton,* 414 U.S. 488, 493–94, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974), also an environmental case, the court said:

> There must be a "personal stake in the outcome" such as to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." . . . Nor is the principle different where statutory issues are raised. Cf. *United States* v. *SCRAP,* 412 U. S. 669, 687, [37 L. Ed. 2d 254, 93 S. Ct. 2405] (1973). Abstract injury is not enough. It must be alleged that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged statute or official conduct. . . . The injury or

threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

Even in the case of declaratory judgments, direct damage must be shown. In *Heisey v. Port of Tacoma,* 4 Wn.2d 76, 83, 102 P.2d 258 (1940), the court quoted approvingly from *Acme Fin. Co. v. Huse,* 192 Wash. 96, 107, 73 P.2d 341, 114 A.L.R. 1345 (1937):

"A proper case for such relief is presented when a plaintiff alleges (1) that he will be directly damaged in person or in property by enforcement of a statute; (2) that the defendant is charged with the duty of enforcing the statute; and (3) is enforcing it or is about to do so; and claims, upon these allegations, that such enforcement will result in the infringement of his (the plaintiff's) constitutional rights."

The only interest plaintiff can claim is he used the Moran State Park. He alleges no special damage to him by reason of the lease. It is true he claims a right of reversion for breach of condition of the deeds conveying land to the state for park purposes. However, there is no showing the deeds themselves contain an express right of reverter for breach of condition nor any showing that if there proves to be a breach of condition in the deeds, that such a breach would cause a reversionary interest to vest in the plaintiff as to land which never came from the plaintiff or his ancestor (grandfather).

Notwithstanding that this case could be disposed of on the issue of standing, we proceed to a consideration of the constitutional arguments on which plaintiff relies.

### SEPARATION OF POWERS

Plaintiff basically contends the legislature, through RCW 43.51.063, reversed the State Parks and Recreation Commission's refusal to grant the KVOS lease. It is argued that the Commission's decision is binding by res judicata, the legislature has no power to overrule the Commission, and that to do so violates the separation of powers doctrine.

It is true that the powers of government are divided into executive, legislative and judicial categories, and generally those charged with the exercise of powers of one branch of government may not encroach upon the powers exercisable by another branch of government. These compartments of government are not rigid, however, and the practicalities of government require that the powers of each take into account the powers of the others. *In re Juvenile Director,* 87 Wn.2d 232, 552 P.2d 163 (1976); *cf. Tacoma v. O'Brien,* 85 Wn.2d 266, 271, 534 P.2d 114 (1975). The doctrine of separation of powers, however, is inapplicable here. Nothing in RCW 43.51.063 prohibits a new application being made for a lease subsequent to the new statute's enactment. Upon new application being made, it then becomes the duty of the State Parks and Recreation Commission to consider the new application in light of existing law. The legislation does not nullify or overrule the earlier decision, it merely provides new standards for action on a new application for a lease. The statute is general on its face, it applies to all who come within its terms. It does not single out a particular lessee by name, and the fact that there are only a limited number of persons who come within the class designated by the statute does not render the doctrine of separation of powers applicable. Thus in *Alton V. Phillips Co. v. State,* 65 Wn.2d 199, 396 P.2d 537 (1964), the statute which was held in violation of article 1, section 12 of the State Constitution named a specific corporation and gave it express authority to maintain an action in superior court on a claim for an equitable adjustment of a contract price. The statute with which we are concerned does not name the specific persons entitled to the benefit of its provisions. We find no violation of the doctrine of separation of powers.

## EQUAL PROTECTION

Plaintiff contends RCW 43.51.063 violates the equal protection clauses of the state and federal constitutions because of the distinctions made between (1) those who

have existing leases and those who apply for them for the first time and (2) between television station leases as opposed to other leases.

Equal protection, required both by the state and federal constitutions, does not mean that all persons must be treated alike. It means, rather, that persons in the same class must be treated alike and that reasonable grounds exist for making a distinction between those within and those without the class. *Washington Kelpers Ass'n v. State,* 81 Wn.2d 410, 421, 502 P.2d 1170 (1972).

In *Seattle v. See,* 67 Wn.2d 475, 486, 408 P.2d 262 (1958), the court said:

> "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 99 L. Ed. 563, 75 Sup. Ct. 461 (1955). . . . The United States Supreme Court has, on another occasion, stated, "Equal protection does not require identity of treatment." . . . The very act of classification involves some degree of discrimination. Equal protection "only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary." . . . There is remaining a wide area of legislative discretion.

*Accord, Markham Advertising Co. v. State,* 73 Wn.2d 405, 427–28, 439 P.2d 248 (1968).

The legislative discretion in making classes is wide, and the statute is presumed constitutionally valid. *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974). It is presumed that the necessary facts exist to justify the legislation and the burden is upon the person attacking the legislation to show affirmatively that the classification is arbitrary. *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n, supra; Brewer v. Copeland,* 86 Wn.2d 58, 542 P.2d 445 (1975).

It is not within our power to invalidate legislation because we think it might be unwise. If there is a reasonably conceivable basis for the legislative classification the statute must prevail. *Brewer v. Copeland, supra; State v. Persinger,* 62 Wn.2d 362, 382 P.2d 497 (1963). We must always remember that we are not a super legislature. It is not our role in government to enact legislation or to add provisions or to change provisions in legislation which are otherwise clear. Let us examine the two classifications attacked.

■ First, the difference between leases which may exist in the future and existing leases is obvious. One who seeks to lease has no existing investment to protect, while one who seeks a renewal of an existing lease may have such an investment. It would be highly unreasonable to say that such a consideration is irrelevant in determining a classification. As a matter of fact this consideration is commonly used in examining statutes with grandfather clauses. When the legislature imposes new license requirements on an occupation which would put out of business those who are unable to meet the new standards, the legislature has frequently provided that the new requirements do not apply to persons already engaged in that occupation. To do otherwise would be arbitrary and capricious. *See Williams v. Walsh,* 222 U.S. 415, 56 L. Ed. 253, 32 S. Ct. 137 (1912); *Ace Fireworks Co. v. Tacoma,* 76 Wn.2d 207, 455 P.2d 935 (1969); *Campbell v. State,* 12 Wn.2d 459, 122 P.2d 458 (1942); *Spokane v. Coon,* 3 Wn.2d 243, 100 P.2d 36 (1940); *Manos v. Seattle,* 146 Wash. 210, 262 P. 965 (1927); *State v. Fraternal Knights & Ladies,* 35 Wash. 338, 77 P. 500 (1904); *Fox v. Territory,* 2 Wash. Terr. 297, 5 P. 603 (1884). As stated in *Campbell v. State, supra* at 470, 472–73:

Persons within the exception have previously invested time, labor, and capital in the establishment of chain dental offices, when that form of dental practice was recognized as lawful. To prohibit the continued maintenance of such established dental offices might well result in

pecuniary loss, while one who has not previously maintained any such office is not in the same manner affected by the prohibition of the statute. . . .

. . .

. . . It is true that such persons may exercise a privilege denied to others, but this same result follows from any lawful statutory classifications. Certainly such persons are granted no monopoly in the sense that competition with them is limited. By any lawful classification, rights more or less exclusive are vested in particular classes of persons. If for this reason legislative classification is unlawful, it would seem that such classifications could seldom be sustained.

Questions similar to that here presented have often received the attention of the courts, and the overwhelming majority of the decided cases support the validity of regulatory legislation which classifies and fixes the rights of those subject to the regulation, according to their conduct and status at the effective date of a legislative enactment.

The second classification attacked is the distinction made between television station leases and all other leases.

■ The State Parks and Recreation Commission was expressly authorized to lease parklands for television station purposes by RCW 43.51.062, which was in existence when the original lease was entered into. One can reasonably conceive a state of facts providing a rational basis for distinguishing between leases to television stations as opposed to others.

Television stations are regulated by federal law. *See* 47 U.S.C. A station is required to obtain a license to operate and to obtain a renewal of such license every 3 years if it is to continue to operate. One license requirement is a showing of adequate physical facilities to emit a clear signal so homes within the broadcast area will obtain satisfactory television reception. In order to provide the necessary equipment, Federal Communications Commission (FCC) regulations require that the television tower be placed on the highest available elevation within the broadcast area, so

there is the best maximum coverage within that area. Thus FCC regulations require:

Location of the [television] antenna at a point of high elevation is necessary to reduce to a minimum the shadow effect on propagation due to hills and buildings which may reduce materially the intensity of the station's signals. In general, the transmitting antenna of a station should be located at the most central point at the *highest elevation available*. To provide the best degree of service to an area, it is usually preferable to use a high antenna rather than a low antenna with increased transmitter power. The location should be so chosen that line-of-sight can be obtained from the antenna over the principal community to be served; in no event should there be a major obstruction in this path. The antenna must be constructed so that it is as clear as possible of surrounding buildings or objects that would cause shadow problems.

(Italics ours.) 47 C.F.R. § 73.685(b) (1976).

The evidence here shows the location on top of Mt. Constitution was the "highest elevation available." The evidence further shows that KVOS is the only American television station transmitting a signal to television receivers in the northwestern part of the state north of Seattle. Under these circumstances, the express authority to lease land in state parks to television stations is a reasonable classification, rationally related to the need to further the public interest. Television station licenses are only granted upon a showing that public interest will be served thereby. *See* 47 U.S.C. 303.

Many, many people are affected by the use made of the transmitting signal if they are to be able to receive television programs. The clearer the signal the better the reception. Under these circumstances, to permit leases of state land to a television station, although the land is in a state public park, is not arbitrary or capricious but is based upon facts relevant to a consideration of the class and rationally related to the statute's purpose of authorizing television leases. All persons similarly situated either now or hereafter are in a position to take advantage of the renewal lease

requirements. We cannot find that the statute is arbitrary or capricious or that the classification made is invalid.

Defendant is critical of the last proviso in RCW 43.51.063 which authorizes the Director of the Commission "in his discretion" to waive any requirement that an environmental impact statement be submitted concerning any lease negotiated and signed between January 1, 1974, and December 31, 1974. However, in the instant case, an environmental impact statement was in fact furnished in November 1973 and there is no claim that a further environmental impact statement was required. Moreover, plaintiff makes no assignment of error directed to that issue.

Affirmed.

WRIGHT, C.J., ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and HICKS, JJ., and HENRY, J. Pro Tem., concur.