[No. 2188–3. Division Three. December 29, 1977.]

THE CITY OF CLARKSTON, ET AL, *Appellants,* v. ASOTIN
COUNTY RURAL LIBRARY BOARD, ET AL,
*Respondents.*

*Arnold & Broyles* and *Scott C. Broyles,* for appellants.
*Jay Roy Jones, Prosecuting Attorney,* for respondents.

MUNSON, C.J.—The City of Clarkston (hereinafter referred to as City) and others brought a declaratory judgment action asking the court to require the Asotin County Rural Library Board (hereinafter referred to as the Board) to grant City residents the right to check out books. This occurred after the City and the Board had been unable to agree on a service contract. After a bench trial, submitted on the pleadings, interrogatories, briefs and oral argument, the court dismissed the action. The City appeals.

This library was established upon application for an original Carnegie Grant by the City of Clarkston and the corresponding school district. The site, which is within the city limits of the City of Clarkston, was donated to the Clarkston School Board, and the library was funded by the school district for a number of years. In 1966, pursuant to RCW 27.12.040 and .050,[1] a rural library district was established and a Board of Trustees appointed by the county commissioners. The assets of the library were transferred to the newly established district.

---

[1] RCW 27.12.040:

"The procedure for the establishment of a rural county library district shall be as follows:

"(1) Petitions signed by at least ten percent of the registered voters of the county, outside of the area of incorporated cities and towns, asking that the question, 'Shall a rural county library district be established?' be submitted to a vote of the people, shall be filed with the board of county commissioners.

"(2) The board of county commissioners, after having determined that the petitions were signed by the requisite number of qualified petitioners, shall place the proposition for the establishment of a rural county library district on the ballot for the vote of the people of the county, outside incorporated cities and towns, at the next succeeding general or special election.

Any governmental unit,[2] including the City, has the power to establish and maintain a library. RCW 27.12.025. Instead, the City contracted to receive library services from an existing library, *i.e.*, the Asotin County Rural Library, as authorized under RCW 27.12.180. In 1975, the City and Board were unable to agree upon the terms of such contract. The Board, while continuing to allow City residents to use the facilities, declined to allow City residents to check books out of the library, a service allowed county residents. Under authority granted by RCW 27.12.280,[3] however, residents of neighboring library districts were accorded on a reciprocal basis the same services granted Asotin County residents.

The City makes two basic contentions:

1. It is the public policy of this State that the residents of a governmental unit in which a public library is located be entitled to free and unhindered use of the library and its facilities.

2. The Board is improperly discriminating against residents of the City merely because they live within the incorporated limits of that City in which the library is physically

"(3) If a majority of those voting on the proposition vote in favor of the establishment of the rural county library district, the board of county commissioners shall forthwith declare it established."

RCW 27.12.050:

"After the board of county commissioners has declared a rural county library district established, it shall appoint a board of library trustees and provide funds for the establishment and maintenance of library service for the district by making a tax levy on the property in the district . . . Such levies shall be a part of the general tax roll and shall be collected as a part of the general taxes against the property in the district."

[2]RCW 27.12.010(1):

"(1) 'Governmental unit' means any county, city, town, rural county library district or intercounty rural library district;"

[3]RCW 27.12.280:

"The board of trustees of a library, under such rules and regulations as it may deem necessary and upon such terms and conditions as may be agreed upon, may allow nonresidents of the governmental unit in which the library is situated to use the books thereof, and may make exchanges of books with any other library, either permanently or temporarily."

located and such discrimination is constitutionally impermissible as a violation of federal and state equal protection provisions.

Plaintiffs' first contention must be examined in light of the statutory definitions and provisions governing this library. A "library" is defined as "a free public library supported in whole or in part with money derived from taxation;" RCW 27.12.010(3). A "rural county library district" is defined as a "library serving all the area of a county not included within the area of incorporated cities and towns;" RCW 27.12.010(5). Pursuant to RCW 27.12.050, the Board is the trustee for the Asotin County Rural Library District. Under RCW 27.12.050 and 84.52.063, the Board is authorized to impose a regular property tax levy on taxable property within the rural library district, which, by definition, excludes property within incorporated cities and towns (RCW 27.12.010(5)).

Under RCW 27.12 the City has four options regarding public libraries: (a) fail to provide library services; (b) establish and maintain its own library (RCW 27.12-.025); (c) join with other governmental units, including counties, to form a regional library (RCW 27.12.080); or (d) contract for services from an existing library (RCW 27.12.180). By its failure to exercise options (b), (c) or (d), the City has exercised option (a)—it has no library service available to its residents.

 The contention that the City residents are entitled to free public library services if such a library is physically within the City's boundaries is not well taken. The argument overlooks the additional language of the statutory definition of a library, i.e., "supported in whole or in part with money derived from taxation". RCW 27.12.010(3). It is apparent, when RCW 27.12 is read as a whole and in conjunction with RCW 84.52.063, however, that financing is necessary to establish and maintain a public library. In addition to the physical plant, shelving, books, reference material and all other property which constitutes a library, people must be employed before a library can function. As

noted in *Amburn v. Daly,* 81 Wn.2d 241, 246, 501 P.2d 178 (1972):

Legislative intent, will, or purpose, is to be ascertained from the statutory text as a whole, interpreted in terms of the general object and purpose of the act.

*Accord, State v. Evans Campaign Comm.,* 86 Wn.2d 503, 546 P.2d 75 (1976). The spirit and intention of RCW 27.12 is to provide *and finance* public libraries. The City has chosen not to participate in that endeavor. We find the Board acted within its legislative grant of authority in denying City residents the right to check books out of its library when the City residents have failed to contribute to its support and maintenance.

The second issue raised by the City is the denial of equal protection of the law because other nonresidents of this district, *i.e.,* residents of other library districts, are allowed all the privileges accorded residents of this district.

Equal protection of the law requires "that persons in the same class must be treated alike and that reasonable grounds exist for making a distinction between those within and those without the class." *Moran v. State,* 88 Wn.2d 867, 874, 568 P.2d 758 (1977). The class, in this case, is not merely nonresident versus nonresident, but rather the Board's policies distinguish between nonresidents who support their own library and nonresidents who support no library. That is a reasonable distinction, not an inherent, suspect classification, nor an invidious discrimination. *Bolling v. Sharpe,* 347 U.S. 497, 98 L. Ed. 884, 74 S. Ct. 693 (1954), supplemented in *Brown v. Board of Educ.,* 349 U.S. 294, 99 L. Ed. 1083, 75 S. Ct. 753 (1955); *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974). Furthermore, the equal protection clause guarantees equal protection of the laws, not equal protection as between geographic areas. *Griffin v. County School Bd.,* 377 U.S. 218, 12 L. Ed. 2d 256, 84 S. Ct. 1226 (1964). Therefore, on these facts, the Board's refusal to allow residents of the City full use of the district's facilities is not a denial of equal protection.

We acknowledge that RCW 27.12.270 states:

Every library established or maintained under this act shall be free for the use of the inhabitants of the governmental unit in which it is located, subject to such reasonable rules and regulations as the trustees find necessary to assure the greatest benefit to the greatest number, . . .

Apparently this board was lax in not formally adopting a regulation establishing its check-out policy. In this instance the failure is not fatal nor does the record indicate the trial court considered this.

Judgment is affirmed.

GREEN and McINTURFF, JJ., concur.