[No. 30258. Department One. March 3, 1948.]

THE STATE OF WASHINGTON, *Respondent*, v. CLARENCE E. MILES *et al., Appellants.*[1]

[1]Reported in 190 P. (2d) 740.

*Warren Hardy,* for appellant Clarence E. Miles.

*Warner, Pierce & Peden,* for appellant Clarence E. Kast.

*Lloyd Shorett* and *James D. McCutcheon, Jr.,* for respondent.

SIMPSON, J.—The defendants in this case were jointly charged with two offenses, being (1) burglary by entering and robbing the offices of Dr. Charles R. Rogers located at the northwest corner of Third and James streets in Seattle, and (2) with the possession of burglar tools. At the conclusion of the trial, the jury returned a verdict of not guilty on the burglary charge, and guilty of the possession of

burglar tools. After the denial of motions for new trial, defendants appealed to this court.

Their assignments of error call in question the action of the trial court in the following particulars: (1) admission of some fourteen exhibits in evidence; (2) overruling motions to suppress certain exhibits admitted in evidence; (3) refusing to grant motions for directed verdicts; and, (4) refusing to grant motions for new trial.

Preliminary to stating the facts produced at the trial, we find it necessary to relate the events which occurred prior to the introduction of evidence.

The record does not indicate the date of the filing of the information charging burglary. The information in the case charging possession of burglar tools was filed July 24, 1947. The charging portion of the information was as follows:

"They, the said CLARENCE E. MILES and CLARENCE E. KAST, and each of them, in the County of King, State of Washington, on or about the 14th day of July, 1946, wilfully and unlawfully then and there did have in their possession various and sundry burglar tools."

Upon motion presented by the prosecuting attorney, the cases were upon the ninth day of September, 1946, consolidated for trial. March 7, 1947, the prosecuting attorney, through one of his deputies, gave to counsel for defendants a notice that the state would, on March 19, 1947, move to amend the information relating to the charge of having burglary tools in possession, by adding the following words:

" 'under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a crime, or knowing the same were intended to be so used.' "

On the day of trial, March 19th, motions presented again by the defendants for separate trials were denied by the court. The court then allowed the information charging possession of burglar tools to be amended as proposed by the state. Before the trial started, counsel for appellants presented to the court motions to suppress certain evidence obtained without a search warrant at the time of the arrest.

The court did not pass upon the motions to suppress the evidence, but stated that he would consider them when the evidence was offered. Appellants were then arraigned and entered pleas of not guilty. The jury was selected and the deputy prosecuting attorney made his opening statement to the jury. At the close of the statement, counsel for appellants again pressed their motions for the suppression of the evidence. The motions were based upon the grounds of illegal search and illegal arrest. The court denied the motions.

The following question and answer indicates the position taken by the court:

"Mr. Warner: You hold that we are not in a position from a timely standpoint for even a motion for the suppression of the records at this time until they offer evidence of illegal search and illegal arrest?

"The Court: Yes, I think so. You may renew that later."

The evidence showed as follows: About 3:30 a. m., July 15, 1946, police officers Roy J. Mahoney and Albert T. Kuehl arrested appellants while they were standing on the sidewalk near an automobile owned by Kast. The officers did not have warrants of arrest or search warrants. Following the arrest, the officers immediately searched the appellants. They took from appellant Miles a piece of celluloid. The evidence on the part of the state showed that the piece of celluloid could be used for opening a lock.

The objection to the admission was that the piece of celluloid was obtained as a result of an unlawful arrest and unlawful seizure. Included in the objection was a motion to suppress the evidence. The court overruled the objection and admitted the offered exhibit.

At the time of the arrest, the officers demanded that appellant Kast open the turtleback of his car. Kast complied with the request and the officers found several tools, consisting of punches, a circular cutting saw, a punch, two screwdrivers, an axe, two flashlights, small chisel, ballpein hammer, a jimmy or crowbar, car tools, a pair of pliers, a pair of gloves, and a sledge.

When the state offered the tools in evidence, counsel objected on the ground that the arrest was unlawful. At the same time, the attorneys for appellants moved that the evidence be suppressed. The objections were overruled and the motion denied. The exhibits were then admitted in evidence.

The circumstances surrounding the arrest are described by the arresting officers as follows: About 2:45 on the morning of July 15, 1946, they were riding in a police car and received a radio message that a "stick-up" had been committed by two young men at the Feek Dairy Lunch at Third avenue and Seneca, Seattle. (Appellants were about forty years of age.) Shortly after receiving the radio message, they apprehended appellants and made the arrest as heretofore related.

At the time the tools were admitted in evidence, appellant Miles asked the court to instruct the jury that those exhibits could not be considered as evidence as against him. The court refused to so instruct the jury.

The robbery of Dr. Rogers' office was not discovered until several hours after the arrest of appellants. The record discloses the following:

"RECROSS EXAMINATION

"BY MR. McCUTCHEON: [Questioning Officer Mahoney] Q. You recall that on cross examination I had just asked you if you believed these men had committed a felony. Now to resume my cross examination. Didn't you as a matter of fact take into account your knowledge that the defendants were old offenders for the crime of robbery? MR. WARNER: That is objected to as immaterial. That is not the basis on which he arrested them. THE COURT: He may answer the question. A. That is right. MR. McCUTCHEON: That is all.

"REDIRECT EXAMINATION

"BY MR. WARNER: Q. You did not arrest them for robbery? A. We arrested them in regard to a robbery that had been committed a short time before and for suspicion of it. Q. You arrested them for robbery, did you? A. Suspicion of robbery, yes. Q. For suspicion, yes."

Appellant Kast maintains that his arrest and the search of his car were in direct violation of his constitutional rights

as provided by the fourth and fifth amendments to the constitution of the United States, and Art. I, §§ 7, 9, of the constitution of the state of Washington; that the evidence obtained under the arrest and seizure should have been suppressed. Appellant Miles makes the same contention, together with the additional one that the admission of the so-called burglar tools was in any event erroneous as far as his trial was concerned.

The state takes the position that the arrest and search were legal; that the search and seizure arose out of an arrest, that the search was incidental thereto, and that any articles found as a result of the search were admissible in evidence. The state takes the position also that the motions presented to suppress the evidence were neither timely nor supported by affidavits or testimony.

It will be observed that the fourth amendment to the constitution of the United States, and Art. I, § 7, of our state constitution, although they vary slightly in language, are identical in purpose and substance. The latter portion of the fifth amendment to the constitution of the United States, and Art. I, § 9, of the constitution of this state, give to individuals the same protection.

 The rights of individuals as guaranteed by our constitution, are not to be lightly considered. The framers of our constitutions, Federal and state, realized that laws affecting the liberty of men must be safeguarded, since the wisdom of the ages has taught that unrestrained official conduct in respect to depriving men of their liberties would soon amount to a total loss of those liberties. Where procedure relating to arrest and search is provided, it must be strictly followed.

This conclusion is fortified by the following excerpts from *Gouled v. United States,* 255 U. S. 298, 65 L. Ed. 647, 41 S. Ct. 261:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in *Boyd v. United States,* 116 U. S. 616, in *Weeks v. United States,* 232 U. S. 383, and in *Silverthorne Lumber Co. v. United States,* 251 U. S. 385) have declared the importance to political liberty and to the welfare of our country of the

due observance of the rights guaranteed under the Constitution by these two Amendments. The effect of the decisions cited is: that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen,—the right, to trial by jury, to the writ of *habeas corpus* and to due process of law. It has been repeatedly decided that these Amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers.

" . . . It is plain that the trial court acted upon the rule, widely adopted, that courts in criminal trials will not pause to determine how the possession of evidence tendered has been obtained. While this is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard and fast formula to every case, regardless of its special circumstances. We think rather that it is a rule to be used to secure the ends of justice under the circumstances presented by each case, and where, in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection to their admission or a motion for their exclusion and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right."

█ It is beneath the dignity of the state of Washington, and against public policy, for the state to use for its own profit any evidence that has been unlawfully obtained. *State v. Buckley,* 145 Wash. 87, 258 Pac. 1030, and *State v. Knudsen,* 154 Wash. 87, 280 Pac. 922.

█ Were the motions to suppress the evidence properly presented? There is a diversity of opinion among courts concerning the time when defendants in a criminal case can object to the introduction of articles improperly seized. Some courts hold that the defendants may object when the articles or evidence concerning them is offered. *Shuck v.*

*State*, 223 Ind. 155, 59 N. E. (2d) 124. Other courts adhere to the rule which compels the defendant before the trial to move to suppress the evidence improperly obtained. This court adheres to the latter rule. *State v. Dersiy*, 121 Wash. 455, 209 Pac. 837, 215 Pac. 34, and *State v. Gunkle*, 188 Wash. 528, 63 P. (2d) 376.

In our opinion, the motions to suppress the evidence were timely presented. True, the motions were not supported by affidavits, but they were supported by statements of counsel for defendants who were officers of the court, and those statements were not denied by the attorneys representing the state. And in fact, as demonstrated by the evidence, they knew of the manner in which the articles were obtained. The motions were made before the arraignment of the appellants and, of course, before the selection of the jury, and the introduction of any evidence.

In *People v. Callier*, 243 Ill. App. 348, we find the following:

"At the beginning of the trial, counsel for the defendant moved the court to suppress the evidence, and, in support of the motions, presented a sworn petition of the defendant. The court ruled that the trial should go on, and stated that at the close of the evidence he would rule upon the defendant's motion.

"The defendant was then arraigned . . .

"Counsel for the defendant then stated that he was undertaking to make a motion to quash the information, and that meanwhile the clerk had no right to arraign the defendant. The court stated, 'Make the motion now, and it will be all right.' Counsel for the defendant then moved the court to quash the information. That motion was then overruled. Following that, the petition to suppress the evidence was filed. . . . [State's evidence showed illegality of the search and seizure.]

"At that point in the trial, counsel for the defendant reiterated his motion to suppress the evidence, on the ground that the house was entered without a search warrant, or other process. The court stated that the motion at that time would be overruled, but for the sake of the record he would still hold it under advisement until all the other evidence was in. . . . [Defendant's evidence emphasized the illegality.]

"At the close of the evidence, counsel again pressed his motion for suppression of the evidence, and it was overruled. Judgment was then entered, as stated above, and motions for a new trial and in arrest of judgment were made and overruled. . . .

"We are of the opinion that the motion not only should have been heard and passed upon before the taking of evidence, but should have been allowed, and that the court should have impounded the intoxicating liquor and refused its use as evidence in the trial."

In speaking of this rule, the court in *Day v. United States*, 31 F. (2d) 71, used the following language:

"In applying this principle, it has been held that a petition for the return of property unlawfully seized, *Amos v. United States*, 255 U. S. 313, 314, 316, 41 S. Ct. 266, 65 L. Ed. 654, or a motion to suppress the evidence resulting from such seizure, *Samson v. United States* (C. C. A.) 26 F. (2d) 769, 770, is made in time, if it is made immediately after the jury are sworn, but the rule has been settled by many decisions, that where the defendant knows of the unlawful seizure, and has had the opportunity to present the question in advance of the trial, an objection to the use of the articles seized, or to testimony relating to the search and seizure, upon the grounds of a violation of the Fourth Amendment, is too late, if it is made after the testimony has begun [citing cases]."

In *Holt v. United States*, 42 F. (2d) 103, the defendant Holt was convicted of the alleged transportation of intoxicating liquor. The facts indicated that the liquor was taken from a truck under the control of defendant, by officers without a search warrant. When the case was called for trial, a motion was made to suppress the evidence for the reason that the search and seizure had been accomplished without a search warrant. The court held:

"We are of the opinion that this motion to suppress did not come too late. The defendant resided in Detroit. The indictment was returned at Grand Rapids, and removal was resisted. Ultimately, the defendant was required to, and did, give bond for appearance at a specified term of court in the Western District of Michigan. Promptly upon complying with the condition of his bond, the point was raised, and was not thereafter waived. His appearance was analogous to arrest as of its date, or appearance upon

an indictment but newly returned, and it was then not too late to raise the question. *Gouled v. U. S.*, 255 U. S. 298, 305, 41 S. Ct. 261, 65 L. Ed. 647; *Amos v. U. S.*, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654."

The subject for investigation in relation to the legality of arrests contains two questions, one relating to the charge of burglary, and the other relating to the charge of having burglar tools in possession.

■ Burglary is a felony in this state. In felony cases a peace officer may, without a warrant, arrest any person who he believes, and has good and sufficient reason to believe, has committed, is about to commit, or is in the act of committing a felony. An officer making an arrest without a warrant, on the theory that a crime has been committed, must not only have a real belief of the guilt of the party about to be arrested, but such belief must be based upon probable cause and reasonable grounds. An officer may not arrest simply because he has some fleeting idea or suspicion that the individual has committed a felony. *State v. Hughlett*, 124 Wash. 366, 214 Pac. 841.

■ The officers who arrested the appellants had no reasonable grounds to believe that appellants had committed a robbery. Officer Mahoney testified that appellants were arrested "for suspicion of robbery." All the information he and his brother officer had was a radio message that two young men had robbed a dairy lunch. That information would certainly not have been sufficient to justify the issuance of a search warrant, or a warrant of arrest, had the officers applied for one. It stands to reason that no wider latitude is allowed in arresting without a warrant, than in securing one.

■■ The next question presented is: Did the officers have the right to arrest appellants on the charge of having burglary tools in their possession? Officers may, without having a warrant of arrest, take into custody one who in their presence commits a misdemeanor. This is true even though the misdemeanor does not amount to a breach of the peace. *State v. Deitz*, 136 Wash. 228, 239 Pac. 386. However, the arrest in the instant case cannot be justified

under this rule, because the gross misdemeanor of possession of burglar tools was not committed in the presence of the arresting officers. This point is illustrated in 6 C. J. S. 581, Arrests, § 5 b:.

"Accordingly, where the officer does not know of the commission of an offense in his immediate vicinity until after a search, the offense is not in his 'presence' so as to justify an arrest without a warrant."

The supreme court of the United States, stated in *United States v. Di Re,* 332 U. S. 581, 68 S. Ct. 222:

"We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success."

Accord: *Byars v. United States,* 273 U. S. 28, 71 L. Ed. 520, 47 S. Ct. 248, and *Smith v. State,* 59 Okla. Crim. 312, 58 P. (2d) 347.

*United States v. Di Re,* just mentioned, is a case that has a definite bearing upon the arrest, search, and conviction of appellant Miles. The facts in that case show that one Buttitta planned to sell counterfeit gasoline ration coupons to an informer at a certain time. At that time, an OPA officer and a New York state police officer saw Buttitta's car stop at a street corner. Buttitta was driving. Di Re was seated beside him, and Reed, the informer, was in the back seat with two coupons in his hand. Reed stated that he secured the coupons from Buttitta. The officers felt the clothing of all three men to see if they had weapons, and then took them to the police station. Officers then told Di Re to lay his possessions on the table. He produced two gasoline coupons which he said he had found. Shortly afterwards he was searched, and one hundred counterfeit coupons were found between his shirt and underwear.

The circuit court of appeals reversed Di Re's conviction in the district court on the ground that the coupons were obtained during an unlawful search; that Di Re's presence in the car did not constitute probable cause for believing that he was a party to an illicit coupon transfer between

Buttitta and Reed, and therefore there was no probable cause for his arrest and search.

On appeal to the United States supreme court, that court made the following holding:

"The Government now concedes that the only person who committed a possible misdemeanor in the open presence of the officer was Reed, the Government informer who was found visibly possessing the coupons. Of course, as to Buttitta they had previous information that he was to sell such coupons to Reed, and Reed gave information that he had done so. But the officer had no such information as to Di Re. All they had was his presence, and if his presence was not enough to make a case for arrest for a misdemeanor, it is hard to see how it was enough for the felony of violating § 28 of the Criminal Code. . . .

"The Government's defense of the arrest relies most heavily on the conspiracy ground. In view of Reed's character as an informer, it is questionable whether a conspiracy is shown. But if the presence of Di Re in the car did not authorize an inference of participation in the Buttitta-Reed sale, it fails to support the inference of any felony at all.

"There is no evidence that it is a fact or that the officers had any information indicating that Di Re was in the car when Reed obtained ration coupons from Buttitta, and none that he heard or took part in any conversation on the subject. Reed, the informer, certainly knew it if any part of his transaction was in Di Re's presence. . . .

"An inference of participation in conspiracy does not seem to be sustained by the facts peculiar to this case. The argument that one who 'accompanies a criminal to a crime rendezvous' cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passers-by, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. If Di Re had witnessed the passing of papers from hand to hand, it would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit. Indeed it appeared at the trial to require an expert to establish that fact. Presumptions of guilt are not lightly to be indulged from mere meetings. . . .

"We meet in this case, as in many, the appeal to necessity. It is said that if such arrests and searches cannot be

made, law enforcement will be more difficult and uncertain. But the forefathers, after consulting the lessons of history, designated our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment. Taking the law as it has been given to us, this arrest and search were beyond the lawful authority of those who executed them."

■ Did the officers have a right to search the automobile belonging to appellant Kast? At the time of their arrest, appellants were standing upon a Seattle sidewalk, as was their right under the constitution and laws of this country. They were not violating any law of this state, or ordinance of the city of Seattle. The only reason given upon which the state attempts to justify its right to search the automobile, was as an incident to the arrest of appellants. Having concluded that the arrests were unlawful, it follows that the search of the car was unlawful.

■ It is our opinion that the methods pursued by the officers in obtaining the exhibits in this case were equivalent to a forcible search of appellant Miles' person, and the automobile of appellant Kast, without authority of law so to do. For that reason, the testimony of the officers relative to the articles found was inadmissible, as were the exhibits offered and received in evidence.

Law officers are to be commended for their zealous efforts to secure testimony against violators of the law. But there is a regular and orderly way of doing this which the officers should bear in mind. The ordinary person who is approached by an officer has respect for the authority of the officer, and will generally, through respect or fear, do whatever the officer commands to be done. And when an officer, without authority of law, violates the security of the person of an individual by demanding that he do something which by law he is not required to do, or uses coercion, then such an act of a person is not a free and voluntary act, but is the result of force by reason of the threatening and coercive attitude of the officer. This statement is not intended as a reflection upon the officers who made the arrest. They properly performed their duty as they understood that duty.

However, their good intentions do not mitigate the harm done to appellants.

The judgments are reversed, with instructions to grant a new trial.

MILLARD, SCHWELLENBACH, and HILL, JJ., concur.

MALLERY, C. J., dissents.

---

June 3, 1948. Petition for rehearing denied.