[Nos. 38981, 38982.    Department Two.    March 2, 1967.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES WILSON *et al., Appellants.*[*]

*Reported in 424 P.2d 650.

Read, Church & Kleweno, by *William H. Dunn* (Appointed counsel for appeal.), for appellants.

*R. DeWitt Jones* and *C. Brent Nevin,* for respondent.

HUNTER, J.—Defendants (appellants) James Wilson and Haywood Williams were convicted of second-degree burglary in the breaking and entering of the Union Oil Company office building in Vancouver, Washington, April 19, 1966. They appeal from the judgment and sentence of the court entered pursuant to the verdict of the jury. The facts of this case are as follows:

On the night of April 19th, Officer C. E. Chambers was patrolling the industrial area of downtown Vancouver. At approximately 8:20 that evening, well after dark, he noticed a station wagon with foreign license plates, parked on the ramp of the Precision Door Company, a company usually closed for business at that time of the night. In the car he observed there were three men. The vehicle itself was unlighted and curiously, for that time of night, had its rear loading gate down. The officer then observed a fourth man cross the lightly traveled street from the direction of the Union Oil Company office building.

When this man entered the car, the motor started, the lights went on and the car began to back down the ramp toward the street. Two individuals in the station wagon then noticed the police car behind them. The station wagon stopped, the lights went out and three of the occupants got out of the car and looked under the hood. After a moment the hood was lowered and the loading gate closed. The men got back into the vehicle, the car was started and the lights came on. The driver then backed the car into the street and proceeded down 11th Street at a normal rate of speed.

Officer Chambers' suspicions were aroused and he radioed for assistance in stopping the car. Within minutes his cover arrived and Chambers pulled the station wagon over to the curb. He asked the occupants what lawful business

they had in this area of town at night under the circumstances he had observed. They responded that they were looking for a friend but were unable to give the officer his name, and that they had pulled off the street when the lights of their car went out. Receiving only partial identification from the men and not believing their story. Officer Chambers placed all four under arrest for vagrancy.

In the meantime, one of the cover patrol cars went back to where the vehicle had first been sighted, some four blocks away, and radioed back that the Union Oil Company office had been burglarized and that various items of office equipment had been placed outside the building. With that information, Officer Chambers advised the suspects they were under arrest for both vagrancy and suspicion of burglary. He then directed them to get out of the station wagon, and with the assistance of the other officer they were searched. A pocket knife with electrical burns on the blade was seized as a result of this search. The suspects were placed in police vehicles for transport to the county jail.

Officer Robert Adams then proceeded to inventory the contents of the station wagon before having it towed to the police garage. While inventorying the items, he noticed a jar of Union 76 UNOBA grease on the floor of the vehicle between the front and the rear seat. He did not seize this article at the time, but merely noted that it was in the automobile. The next day the car was searched by other officers of the Vancouver police department, who had procured a valid search warrant. The jar of grease was taken by them at this time and recognized as having come from a display case in the burglarized building. The burns on the blade of the pocket knife were later associated with the cutting of an electrical cord connected to one of the office machines taken from the premises. The trial court admitted both the jar of grease and the pocket knife into evidence, after overruling a motion to suppress them from the evidence in the case.

The defendants first contend that the trial court erred in admitting these items into evidence, since both had been obtained as the result of an unlawful arrest and search.

The defendants maintain that Officer Chambers stopped the car and held the defendants for vagrancy only as a pretext to check them out; that no probable cause existed for their arrest for vagrancy. They argue that the subsequent search, though made at a later time when probable cause existed that a burglary had been committed, was tainted by the original illegality in stopping the vehicle. We disagree.

■■ The authority of police officers to make an arrest without a warrant is restricted to (1) where there has been a misdemeanor committed in the presence of an arresting officer, or (2) when the arresting officer has probable cause to believe that the person or persons arrested have committed a felony. *State v. Hughlett,* 124 Wash. 366, 368, 214 Pac. 841 (1923); *State v. Davis,* 69 Wn.2d 127, 417 P.2d 622 (1966). The constitutional standard for searches and seizures without a warrant requires that the search must be substantially contemporaneous with and incident to a lawful arrest, and under all circumstances of the case must be a reasonable one. *State v. Schwartzenberger, ante* p. 103, 422 P.2d 323 (1966); *State v. Biloche,* 66 Wn.2d 325, 402 P.2d 491 (1965); *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Michaels,* 60 Wn.2d 638, 374 P.2d 989 (1962). See also *Henry v. United States,* 361 U.S. 98, 4 L. Ed. 2d 134, 80 Sup. Ct. 168 (1959); *Carroll v. United States,* 267 U.S. 132, 69 L. Ed 543, 45 Sup. Ct. 280, 39 A.L.R. 790 (1924); and *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 Sup. Ct. 881 (1964).

The defendants cite *State v. Michaels, supra,* to support their contention that the search of their persons was invalid. In *Michaels,* we held that an arrest for a misdemeanor only as a pretense to discover evidence of a felony amounted to an unreasonable and unlawful search requiring suppression of any evidence seized. We find no circumstances in the present case to suggest such a pretense was

used by Officer Chambers, as the basis on which to conduct a search for evidence. After the arrest for vagrancy, no search was made of the persons of the defendants until word had been received that a burglary had been committed, and then only after they were advised they were also under arrest for burglary. The search, therefore, made subsequent to the arrest for a felony, was reasonable and proper.

The defendants contend that the search of the station wagon, which elicited the jar of grease, after the defendants had been placed in police patrol cars was not incident to the arrest. We disagree. In the recent case of *State v. Schwartzenberger, supra,* we held that the search of a vehicle while the defendants were being transported to jail did not render the search so remote in time or place from the arrest as to prevent it from being incident thereto. We see no circumstances in the present case that would distinguish it from our holding in *Schwartzenberger, supra.* See also *State v. Olsen,* 43 Wn.2d 726, 263 P.2d 824 (1953).

The defendants contend that the trial court erred in limiting its examination of an accomplice, testifying on behalf of the state; and that their counsel was restricted from commenting in his argument to the jury on the fact that this witness had pleaded guilty to the burglary but as yet had not been sentenced. The defendants argue that they were prevented from showing interest or bias on the part of the witness, who could have believed he would receive favorable treatment from the authorities by reason of his testimony. We agree that defendants' counsel should have been allowed greater latitude in his examination of this witness and in his argument to the jury.

The rule is well settled that great latitude should be allowed in the cross-examination of an accomplice who testifies for the state in the trial of his associates. Counsel may criticize and comment to the jury on the interests of such a witness as affecting his credibility based on what this cross-examination has revealed. 53 Am. Jur. *Trial* § 463, p. 368; Annot., 74 A.L.R. 1157. In the instant case, however,

the record discloses that counsel for the defendants examined the witness relative to his prior criminal record and inconsistent versions of the crime given earlier to police officers. Counsel was not limited in his argument upon the credibility of the witness in this regard. The record further discloses that the court gave a cautionary instruction to the jury on the weight to be given the testimony of an accomplice. Under these circumstances, the error was not so prejudicial as to justify a new trial.

The judgments and sentences imposed by the court are affirmed.

FINLEY, C. J., OTT and HAMILTON, JJ., and DENNEY, J. Pro Tem., concur.

