[No. 44177.   En Banc.   May 11, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL LEE HEHMAN, *Petitioner.*

46

*Erickson & Worthington* and *Ross Worthington,* for petitioner (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Gregory G. Staeheli, Deputy,* for respondent.

WRIGHT, C.J.—This case presents two questions. Was it reasonable and constitutionally permissible to take the defendant into custody and transport him to jail for minor traffic violations? Was it proper to invade defendant's pockets and open two small pill boxes found in the pockets as a part of an arrest search? We answer both questions in the negative.

At approximately 10:20 p.m. on August 13, 1974, defendant was driving his vehicle on Geiger Boulevard in Spokane County. A deputy sheriff observed a defective taillight on the vehicle and followed defendant. After defendant stopped his car in the driveway of his passenger's residence, the deputy sheriff approached and asked for defendant's motor vehicle operator's license and he ascertained that it had expired on July 25, 1974. He then asked defendant what he was doing and where he was going. Defendant replied he was taking his girl friend home and was then going to work. Defendant was employed at Expo '74, which was in progress in the city of Spokane. The vehicle was actually stopped and the arrest and search took place on private property. The vehicle was left there with the approval of defendant. The deputy sheriff never discussed alternate ways for defendant to get to work, or the possible consequences of defendant's absence from work, but assumed that unless placed in custody defendant would drive to work. At this point, the deputy arrested defendant. A search of defendant's person resulted in the discovery of

two small metal pill boxes in which suspected illegal drugs were found.

With respect to whether a custodial arrest was justified under the circumstances, it will be initially conceded that such an arrest would be proper under traditional rules of law. An officer generally has the authority to arrest for a misdemeanor committed in his presence. *State v. Wilson,* 70 Wn.2d 638, 424 P.2d 650 (1967); *State v. Hughlett,* 124 Wash. 366, 214 P. 841 (1923); *State v. Miles,* 29 Wn.2d 921, 190 P.2d 740 (1948); *State v. Deitz,* 136 Wash. 228, 239 P. 386 (1925); RCW 46.64.015.

We hold as a matter of public policy that custodial arrest for minor traffic violations is unjustified, unwarranted, and impermissible if the defendant signs the promise to appear as provided in RCW 46.64.015. We note that RCW 46.64.017, which applies when there has been an accident, prohibits a law enforcement officer from holding a person "for a period of time longer than is reasonably necessary to issue and serve a citation and notice," except in two carefully defined instances: (1) when the person is driving the motor vehicle while under the influence of intoxicating liquor, controlled substances, or drugs in violation of applicable laws, or (2) when the person refuses to sign a written promise to appear in court as required by RCW 46.64.015.

The holding stated above is in keeping with the clear spirit of the legislation and with the entire trend of the judicial and legislative philosophy in the field of traffic offenses. There is wide discussion of removing the status of "criminal" from such offenses, which is often referred to as "decriminalization". For example, the Uniform Vehicle Code and Model Traffic Ordinance §§ 16–201–206 (rev. 1971) recommends required release of all drivers upon the issuance of a citation except those charged with commission of several specified offenses (§§ 16–202(a)(1)–(a)(7) and 16–204(2)–(4)), those who fail to furnish satisfactory evidence of identification (§ 16–204(1)), and those who the officer has

"reasonable and probable grounds to believe . . . will disregard a written promise to appear in court." Sections 16–204(1) and 16–205(b). Likewise the American Law Institute has recommended standards "designed to provide the maximum use of citations, so that persons believed to have committed offenses will be taken into custody only when necessary in the public interest." ALI Model Code of Pre-Arraignment Procedure § 3.02(4) (Tent. Draft No. 2, 1969).

Many states have patterned statutes after the Uniform Vehicle Code of 1954, and "have sharply restricted the authority of an officer to take a traffic misdemeanant into custody except in certain specified instances." E. C. Fisher, *Laws of Arrest* 158 (1967). The specified instances referred to are:

(1) When the person demands immediate appearance before a magistrate, (2) when he is arrested upon a charge of homicide, (3) driving while under the influence of intoxicating liquor or narcotic drugs, (4) failure to stop in the event of an accident or (5) "in any other event when . . . (he) refuses to give his written promise to appear in court. . . ."

E. C. Fisher, *supra* at 158 n.4.

Further indication of the changing attitude towards arrest for minor traffic offenses is found in ABA Standards Relating to Pretrial Release § 2.1 (Tent. Draft, March 1968):

It should be the policy of every law enforcement agency to issue citations in lieu of arrest or continued custody to the maximum extent consistent with the effective enforcement of the law. A law enforcement officer having grounds for making an arrest should take the accused into custody or, already having done so, detain him further only when such action is required by the need to carry out legitimate investigative functions, to protect the accused or others where his continued liberty would constitute a risk of immediate harm or when there are reasonable grounds to believe that the accused will refuse to respond to a citation.

The commentary following section 2.1 reads in part as follows:

In all but the most minor violations of traffic or administrative regulations, the automatic response of the police acting without a warrant usually is to formally arrest the accused. See generally LaFave, Arrest 168 *et seq.* (1965). Almost no thought is given to the question whether, in any given case, there is a *need* for custody or whether, on the other hand, society's interests might be just as well or better served if the accused were to be issued a citation. It makes little sense to jail a man who, when he appears before the judge, will be clearly qualified for release without bail.

■ While *United States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973) and *Gustafson v. Florida,* 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488 (1973) do not require the result reached herein, they do not in any way prevent our reaching this result. Decisions of the United States Supreme Court establish the minimum rights which may be accorded a defendant and yet comply with the guaranties of the United States Constitution. Such decisions, however, do not limit the right of state courts to accord to defendants greater rights. We are also not unmindful of the concurring opinion of Mr. Justice Stewart in *Gustafson* where at page 266 he pointed out that if defendant therein had not conceded the legality of his arrest, a serious problem might have been presented. The defendant in that case was placed under custodial arrest for failure to have his driver's license on his person.

As is pointed out in Note: *Personal Search of Suspect Incident to Custodial Arrest Is Per Se "Reasonable" and Requires No Additional Justification—United States v. Robinson, 414 U.S. 218 (1973); Gustafson v. Florida, 414 U.S. 260 (1973),* 49 Wash. L. Rev. 1123, 1142 (1974):

> Because municipal codes often permit custodial arrest for minor and even trivial offenses, the risk of pretext arrests is heightened. It is conceivable that in those instances where there is insufficient probable cause to secure a search warrant, police could arrange to arrest a suspect for violating a leash law or for running a stop sign solely to invoke *Robinson's* "unqualified authority" to search the arrestee.

Although the statutes RCW 46.64.010, .015, .017 and .030, if read together, might well be construed in such a way as to reach the same result as we reach herein, that is, an arguable matter upon which there well could be differences of opinion. We prefer, therefore, to hold a custodial arrest is not proper for a minor traffic violation. However, we do not imply that a law enforcement officer must disregard custodial arrest if he has other reasonable grounds apart from the minor traffic violation itself. In those situations, *the general rules of arrest control.*

■ Since the custodial arrest was improper in this case, the search of defendant's person incident thereto was also improper. *State v. Miles,* 29 Wn.2d 921, 190 P.2d 740 (1948).

As mentioned earlier, the custodial arrest was proper under existing law in effect before this case. For that reason, we hold that no civil liability can be incurred by the officer or by any person or entity by reason of the custodial arrest involved here. We hold further that the rule announced herein is prospective only. Mr. Hehman shall have the fruits of his appeal, but no other person who was taken into custody prior to the filing of this opinion shall receive any rights as a result of the rule we announce in this case.

For the reasons stated, the judgment of the trial court suppressing the evidence and dismissing the charges against defendant is reinstated and the decision of the Court of Appeals is reversed.

ROSELLINI, UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

BRACHTENBACH, J. (dissenting)—I dissent. The majority not only legislates, it renders an advisory opinion on a variety of subjects and is clearly erroneous.

The deputy sheriff made a lawful arrest. The defendant possessed an expired driver's license and indicated an intent to continue driving in violation of the law.

The arresting officer was entitled to enforce the law and prevent further violations of the statutes. In the course of exercising his discretion, that officer under all the applicable cases, was entitled to search the defendant. He did so and found contraband.

This court should not do two things (1) second–guess the officer's exercise of discretion and (2) legislate what the legislature has declined to do in "decriminalizing" minor traffic offenses.

The United States Supreme Court has approved the procedures followed by the officer. *See United States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973), and *Gustafson v. Florida,* 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488 (1973). The majority admits that.

Under the majority ruling the officer almost needs an appellate court riding his patrol vehicle to advise of the changing nature of the rules.

The unwarranted excursion of the majority is evidenced by its gratuitous holdings that no civil liability attaches to this particular arrest, that it is prospective only and no one else benefits from the holding. These are all issues not before us and indicate the bizarre departure from the heretofore established rules.

I would affirm the Court of Appeals.

HAMILTON and STAFFORD, JJ., concur with BRACHTENBACH, J.