257 N.J. Super. 483 (1992)
608 A.2d 952
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EILEEN PIERCE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 28, 1992.
Decided June 19, 1992.
*484 Before Judges PRESSLER, SKILLMAN and D'ANNUNZIO.
Wilfredo Caraballo, Public Defender, attorney for appellant (M. Virginia Barta, Assistant Deputy Public Defender, of counsel and on the letter-brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Linda A. Rinaldi, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Pursuant to a plea agreement entered into after the denial of her motion to suppress evidence, defendant pleaded guilty to count three of Monmouth County Indictment XX-XX-XXXX, charging possession of cocaine. The court sentenced her to three years probation.
The facts are not in dispute. Officer Rette stopped a vehicle owned and operated by codefendant Nicholas Grass because Rette had clocked the vehicle's speed at 51 miles per hour in a 40-mile-per-hour zone. Defendant Pierce and codefendant Bernardo were passengers in the Grass vehicle. Grass presented a Pennsylvania driver's license, which Rette determined through communication with his headquarters to have been suspended. Rette arrested Grass for operating a vehicle while his license was suspended, N.J.S.A. 39:3-40, handcuffed him and placed him in the police vehicle.
Pierce and Bernardo were ordered to exit the Grass vehicle. Rette searched the vehicle and found a loaded handgun in a metal container. He also found three jackets in the vehicle. One of the jackets belonged to defendant Pierce and in it officer Rette found a trace amount of cocaine in cellophane packaging. Defendant now appeals from the denial of her suppression motion and makes the following contentions:

*485 POINT I
THE SEARCH OF THE VAN INCIDENT TO THE DRIVER'S ARREST FOR A MOTOR VEHICLE VIOLATION VIOLATED DEFENDANT PASSENGER'S RIGHTS UNDER ARTICLE I, PARAGRAPH 7 OF THE NEW JERSEY CONSTITUTION WHERE THE OFFICER HAD NO REASONABLE BELIEF THAT THE SEARCH WOULD PRODUCE WEAPONS OR EVIDENCE OF CRIME
POINT II
THE ARREST OF THE DRIVER FOR DRIVING WHILE SUSPENDED WAS IMPROPER WHERE ANOTHER LICENSED DRIVER WAS PRESENT AND ABLE TO DRIVE THE VAN; THEREFORE, THE EVIDENCE SEIZED IN A SEARCH INCIDENT THERETO SHOULD NOT BE SUPPRESSED (Not Raised Below)
We rejected similar contentions in the companion case of State v. Grass, 250 N.J. Super. 74, 593 A.2d 379 (App.Div. 1991). In Grass we applied New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981), which held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" including any containers found within the passenger compartment. We perceive no basis in this record for not applying the bright line rule announced in New York v. Belton and, therefore, we affirm substantially for the reasons expressed in State v. Grass, supra.
We deem it necessary, however, to make some observations regarding our holding in this case and in Grass.
N.J.S.A. 39:5-25 (hereafter § 25), authorizes any law enforcement officer to arrest without a warrant any person violating "in his presence" any provision of Chapter 3 or Chapter 4 of Title 39. The grant of authority in § 25 coupled with the principle announced in New York v. Belton, supra, create a potential for abuse. Unrestricted application of § 25 and Belton would permit a law enforcement officer to convert any prosaic motor vehicle violation into an occasion for the full *486 search of the automobile merely by exercising the § 25 authority to arrest rather than issuing a summons.
This case, however, does not involve the abuse of § 25 authority. Operation of a motor vehicle by a person whose license is suspended is one of the more serious Title 39 offenses. A first offender must be fined $500. A second offender must be fined $750 and be imprisoned in the county jail for a period not to exceed five days. A third offender must be fined $1,000 and be imprisoned in the county jail for a period not to exceed ten days. N.J.S.A. 39:3-40a, b and c. See State v. Pavao, 239 N.J. Super. 206, 210-213, 570 A.2d 1285 (App.Div. 1990); State v. Duva, 192 N.J. Super. 418, 421-422, 470 A.2d 53 (Law Div. 1983). In addition, violators shall suffer additional license suspension, not to exceed six months. N.J.S.A. 39:3-40d. A person who operates a vehicle while suspended and is involved in an accident resulting in injury to someone other than the violator, must serve 45 days in the county jail. N.J.S.A. 39:3-40e. Moreover, violation of N.J.S.A. 39:3-40 almost always involves purposeful, premeditated disregard of the statute, unlike many other motor vehicle violations which usually involve impulsive or careless behavior. Based on the seriousness of the offense and Grass' purposeful disregard of his legal incapacity to operate his vehicle, we are satisfied that Grass' arrest was a reasonable exercise by Officer Rette of § 25 authority. However, whether Belton should be applied in the context of an irregular exercise of § 25 authority is an open question.
Affirmed.
PRESSLER, P.J.A.D., dissenting.
I am constrained to dissent because I believe the majority's holding, notwithstanding its expressed reservations, constitutes a serious compromise of the Fourth Amendment.
The majority reads New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), as standing for the proposition *487 that a police officer is at liberty to arrest a motorist stopped for a traffic violation and then, without running afoul of the Fourth Amendment, the officer may search both him and his vehicle as incident to the arrest. I think this reading is overbroad. In Belton itself, the police had probable cause prior to their arrest of the motorist to believe that a crime, namely use and possession of marijuana, had been or was being committed. It is true that in holding that a lawful arrest of a motorist permits the ensuing search, the United States Supreme Court relied on United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), both of which involved a search following an arrest, as here, for driving without a valid license. But in Gustafson, the defendant had not challenged the lawfulness of his arrest, and the Court expressly declined to address that issue. And in Robinson, the arrest of the motorist was in accord with specific police regulations prescribing the circumstances pursuant to which the officer was required to take a traffic violator into custody. I am, therefore, not at all convinced that Belton does establish the bright-line rule enunciated by the majority.
The majority also relies on N.J.S.A. 39:5-25, which authorizes a police officer to arrest a person committing a traffic violation in the officer's presence. But this broad statutory authorization obviously does not compel such an arrest. Nor does it relieve the officer from exercising the authority so conferred upon him consistently with the reasonableness keystone of the Fourth Amendment. And I think it clear, as the majority itself recognizes, that the arrest of a motorist for a routine traffic violation with the attendant loss of liberty and the intrusiveness and humiliation implicit in arrest procedures is not ordinarily reasonable in Fourth Amendment terms.
I am also satisfied that even if Belton could be read as enunciating a rule that permits an arrest for a routine traffic violation, that rule has not, as this court pointed out in State v. Grass, 250 N.J. Super. 74, 78, 593 A.2d 379 (App.Div. 1991), been *488 expressly accepted by the New Jersey Supreme Court. I also note that the New Jersey Supreme Court vigorously embraces the proposition that
... American federalism confers upon this Court the power to afford the citizens of this State greater protection against unreasonable searches and seizures than may be required by the Supreme Court's interpretation. [State v. Alston, 88 N.J. 211, 225, 440 A.2d 1311 (1981)].
I start, therefore, from the perception that we are not bound by the Belton rule even if it is as broad as the majority asserts.
I am convinced, moreover, that an unqualified application of such a rule would contravene the Fourth Amendment. I am not alone. Justice Stewart opened his concurring opinion in Gustafson with the observation that since the defendant had not raised the issue of the legality of his arrest for driving without a valid driver's license, the Court would not deal with it. He nevertheless opined that "a persuasive claim might have been made in this case that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments." 414 U.S. at 275, 94 S.Ct. at 492, 38 L.Ed.2d at 462. The leading scholar on the Fourth Amendment, Wayne R. LaFave, has also condemned a blanket authority of the police to arrest for traffic violations, viewing such an authority as leading to pretextual arrests and permitting arbitrary inequality of enforcement. See 2 LaFave, Search and Seizure § 5.2(g) at 465 (2d ed. 1987). See also LaFave, "Case-By-Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma, 1974 Sup.Ct.Rev. 127, 158. A number of states have enacted legislation qualifying the right of police to arrest for minor traffic violations,[1] and a *489 number of others have done so by way of developing Fourth Amendment jurisprudence.[2] And the majority of this court has *490 itself recognized that "[u]nrestricted application of ... [N.J.S.A. 39:5-25] would permit a law enforcement officer to convert any prosaic motor vehicle violation into an occasion for the full search of the automobile...." (Opinion at 485, 608 A.2d at 953).
My disagreement with the majority is over its assumption that driving on the revoked list is so serious an offense as to warrant arrest. I point out first that there is a strong public policy in this state favoring the issuance of a summons in lieu of warrant except in the case of serious first degree crimes. See R. 3:3-1(b), effective September 8, 1980. As explained by the Report of the Criminal Practice Committee, that provision was intended to prescribe "a presumption regarding when a summons should issue, subject to rather broad exceptions where there is a need for further investigation, detention or avoidance of public danger." 105 N.J.L.J. Index Page 425, 426 (1980). This approach comports with the Uniform Rules of Criminal Procedure (U.L.A.), Rule 211 (1974). See also ALI, Model Code of Pre-Arraignment Procedure § 120.2(4) (Proposed Official Draft 1975), requiring police regulations "designed to provide the maximum use of citations, so that persons believed to have committed offenses will be taken into custody only when necessary in the public interest." And see ABA Standard 10-2.1 relating to pretrial release, suggesting that "it should be the policy of every enforcement agency to issue citations in lieu of arrest ... to the maximum extent consistent with effective enforcement of the law." ABA Standards for Criminal Justice, Vol. II (1986). According to the Commentary to Standard 10-2.2:
[F]or many defendants arrest involves a needless and wasteful invasion of personal freedom.... But the decision concerning the necessity for arrest should not be left to the untrammeled discretion of the arresting officer. A standard that permits officers to arrest or not according to their personal *491 assessment of a defendant is bound to lead to unequal enforcement of the laws. [Id. (Footnote omitted)].
As to crimes not enumerated by subsection (1), R. 3:3-1(b), which is patterned on the Uniform Rule, permits issuance of a warrant rather than summons only if the accused has previously failed to respond to a summons; if he is dangerous to himself, to others or to property; if there are other outstanding arrest warrants against him; if an arrest warrant is necessary to subject him to the jurisdiction of the court; or if there is reason to believe he will not appear in response to a summons. We further note that R. 3:3-1(b) is applicable to offenses cognizable in the municipal court by reason of R. 7:3-1. There is nothing in this record to suggest that any of these exceptional circumstances was applicable to the driver here.
I recognize that there are situations in which the arrest of a driver for a motor vehicle offense may nevertheless be reasonable. Certainly, if the officer has probable cause to believe the motorist is driving while intoxicated or under the influence of narcotics, an arrest is indicated if, for no other reason, to permit breathalyzer testing. I do not, however, believe that driving on the revoked list, unattended either by any other articulably suspicious circumstances or by a reasonable belief that defendant will not respond to the summons, warrants an arrest. This is certainly true of a first offense of driving on the revoked list, which, as the majority points out, is unattended by an incarceratory penalty.[3] In sum, I am convinced that if the State's paramount interest in protecting the safety of the highways can be served without imposition of a jail term upon adjudication of guilt of a particular traffic offense, a motorist stopped for that offense should ordinarily not be subject to roadside arrest simply because he committed it in the officer's presence. I fully endorse the comment to the original Uniform *492 Rule 211(c)[4], supra, which states unequivocally that "[i]f the offense is not punishable by incarceration, the person may not be arrested under the rule."
Nor do I believe that arrest is warranted simply because the nature of the traffic offense precludes the motorist from driving away from the scene. If there is another licensed driver in the vehicle[5] and the vehicle is operable, an arrest is obviously unnecessary. Even if such an alternative is not available, there is no reason why the motorist, after issuance of the summons, cannot be treated by the police as any other stranded driver, whose vehicle is customarily towed to commercial premises rather than impounded and searched and who is afforded the courtesy by the police of being assisted with obtaining transportation.
The summons versus arrest problem in the precise context of motor vehicle offenses has been addressed by the Uniform Vehicle Code and Model Traffic Ordinance § 16-202 (1979). It permits arrest only for the following offenses:
1. Homicide by vehicle;
2. Driving or being in actual physical control of a vehicle while under the influence of alcohol or any drug....
3. Failure to stop, or failure to give information, or failure to render reasonable assistance, in the event of an accident resulting in death or personal injuries....
4. Failure to stop, or failure to give information, in the event of an accident resulting in damage to a vehicle or to other property....
5. Reckless driving; ...
6. Racing on the highway; or ...
7. Willfully fleeing from or attempting to elude a police officer.
*493 In the absence of any of the exceptions enumerated by R. 3:3-1(b), it is my view that an arrest for a traffic violation ordinarily contravenes the Fourth Amendment. I am convinced that this is clearly so if the violation is not one of the serious offenses enumerated by the Uniform Vehicle Code. Since none of the permissible grounds of arrest were demonstrated here, I would conclude that the arrest of the driver in this case was unlawful and the consequent search of the automobile, therefore, unreasonable. I would consequently reverse the denial of defendant's suppression motion.
I think the issue an important one, meriting the attention of the Supreme Court Committee on Criminal Practice and the Committee on Municipal Court Practice, which may wish to consider prescribing specific arrest standards in traffic cases. I commend the problem to their attention.
NOTES
[1] See, e.g., Ala. Code § 32-1-4 (1983) (when a person is arrested for a motor vehicle misdemeanor, officer shall release upon written bond to appear, unless officer has good cause to believe the person has committed any felony or the person is charged with an offense resulting in injury or death of DWI); Alaska Stat. 12.25.180(b) (1984) (when a person is stopped for an infraction or violation, he shall be issued a citation unless satisfactory evidence of identity has not been furnished or the person refuses to accept a citation or give written promise to appear); Ind. Code Ann. § 9-30-2-5 (Burns 1987) (person arrested for motor vehicle misdemeanor must be released on a written promise to appear, unless charged with an offense contributing to death or injury, DWI offense, failure to stop after an accident causing serious injury or damage, or driving while license is suspended or revoked); Ky. Rev. Stat. Ann. § 431.015(2) (Baldwin 1985) (officer must issue citation rather than arrest for motor vehicle violations, except for certain violations, e.g., failure to drive in a careful manner or DWI); La. Rev. Stat. Ann. § 32:391 (West 1988) (officer shall release person arrested for motor vehicle violation on promise to appear, except when, e.g., officer has good cause to believe person committed a felony or misdemeanor); Md.Transp.Code Ann. § 26-202(a)(2) (1987) (officer may arrest without warrant for any traffic law violation if violation committed within officer's presence and person does not furnish satisfactory proof of identity or officer reasonably believes traffic citation will be ignored); Neb. Rev. Stat. §§ 29-427, -432, 39-6,105 (1984-1985) (officer shall issue citation for traffic infraction, but can arrest and detain person if, e.g., officer believes person will not appear, or will cause immediate harm if not detained, or if person has no ties to community); N.M. Stat. Ann. § 66-8-123 (1987) (officer must issue summons with five exceptions); N.D. Cent. Code § 39-07-07 (1987) (requires the issuance of a summons with some exceptions); Okla. Stat. Ann. tit. 22, § 1115.1(A) (West Supp. 1989) (officer shall release on personal recognizance person arrested solely for misdemeanor traffic violation if, among other requirements, officer is satisfied as to person's identity): Or. Rev. Stat. §§ 133.310(1), 810.410, 811.140 (1987) (officer shall not arrest person who commits traffic infraction and may issue citation instead; however, officer can arrest for certain specified offense, e.g., reckless driving); S.C. Code Ann. § 56-25-30 (Law Co-op.Supp. 1988) (officer may release person on own recognizance who has accepted traffic citation issued by officer); S.D. Codified Laws Ann. § 32-33-2 (1984) (citation required whenever violation punishable as misdemeanor); Va. Code Ann. § 46.1-178 (Supp. 1988) (officer shall release upon written promise to appear person committing misdemeanor traffic offense except in certain specified instances).
[2] See, e.g., State v. Hehman, 90 Wash.2d 45, 578 P.2d 527, 528 (1978) ("[w]e hold as a matter of public policy that custodial arrest for minor traffic violations is unjustified, unwarranted, and impermissible if the defendant [agrees] to appear."); State v. Martin, 253 N.W.2d 404 (Minn. 1977) (holding that the Minnesota Rules of Procedure give the officer "no discretion to subject defendant to a custodial arrest for a petty misdemeanor."); People v. Wohlleben, 261 Cal. App.2d 461, 67 Cal. Rptr. 826 (1968) (holding that the California Vehicle Code precluded an arrest for running a red light); People v. Marsh, 20 N.Y.2d 98, 281 N.Y.S.2d 789, 792, 228 N.E.2d 783 (1967) ("the Legislature never intended to authorize a search of a traffic offender unless, when the vehicle is stopped, there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty of a crime rather than merely a simple traffic violation.").
[3] There is nothing in this record to suggest the driver was guilty of a second or other successive offense.
[4] The Uniform Rules of Criminal Procedure, as approved by the National Conference of Commissioners on Uniform State Laws in 1974, were redrafted in 1987.
[5] According to the record here, there were two passengers in the Grass vehicle, defendant, who had no identification, and co-defendant Bernardo who presented an apparently valid driver's license. There was no evidence that Bernardo's license was not valid.